LAWRENCE W. FREIMAN, ESQ.
Nevada Bar No. 10588
lawrence@freimanlegal.com
FREIMAN LEGAL, P.C.
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
Telephone: (310) 917-1004; Facsimile: (310) 300-2603
*Counsel for Plaintiff Mia Bernadette Berta*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MIA BERNADETTE BERTA, an individual,

Plaintiff,

v.

CONTROLLED CONTAMINATION SERVICES, LLC; and DOES 1 through 20, inclusive,

Defendants.

CASE NO.: 3:26-cv-00530-MMD-CLB

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. Sexual Harassment / Hostile Work Environment in Violation of Title VII (42 U.S.C. § 2000e-2(a));
2. Sex Discrimination in Violation of Title VII (42 U.S.C. § 2000e-2(a));
3. Retaliation in Violation of Title VII (42 U.S.C. § 2000e-3(a));
4. Sex Discrimination and Hostile Work Environment in Violation of NRS 613.330; and
5. Retaliation in Violation of NRS 613.340.

**DEMAND FOR JURY TRIAL**

Plaintiff MIA BERNADETTE BERTA ("Plaintiff" or "Ms. Berta"), by and through her counsel of record, Freiman Legal, P.C., hereby complains and alleges against Defendant CONTROLLED CONTAMINATION SERVICES, LLC ("Defendant" or "CCS") and DOES 1 through 20, inclusive, as follows:

## <u>NATURE OF THE ACTION</u>

1. This is an action for unlawful retaliation, sexual harassment (hostile work environment), and sex discrimination arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Nevada's employment

discrimination statutes, NRS 613.310 to 613.4383, inclusive. Plaintiff, a janitorial worker on Defendant's account servicing Panasonic facilities in northern Nevada, was sexually harassed by a male coworker. She reported the harassment to her supervisor on the night of January 19, 2026. Eighteen days later Defendant suspended her without pay, and twenty-four days later Defendant discharged her.

2. The manager who recommended Plaintiff's suspension and discharge introduced her, in the same internal email in which he made that recommendation, as "the employee who just experienced the inappropriate work message incident." Defendant then suspended and discharged Plaintiff using written notices that were, in material part, verbatim copies of the notices Defendant had used weeks earlier to suspend and discharge the man who had harassed her, including by informing Plaintiff that a "final on-site incident" of hers "may have contributed to a harassing work environment."

3. Plaintiff seeks compensatory and punitive damages, back pay and front pay, lost benefits, equitable and injunctive relief, and reasonable attorneys' fees and costs, as set forth below.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 2000e-5(f)(3), because those claims arise under the laws of the United States.

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within this District, at Defendant's worksites located at 1 USA Parkway, Lockwood, Nevada, and in Reno, Nevada, and because Plaintiff would have continued

to work for Defendant within this District but for the unlawful employment practices alleged herein.

7. The events giving rise to this action occurred in Storey County and Washoe County, Nevada. This action therefore arose in, and is properly filed in, the unofficial Northern Division of this Court, in Reno, Nevada. LR IA 1-6; LR IA 1-8.

**PARTIES**

8. Plaintiff MIA BERNADETTE BERTA is, and at all times relevant hereto was, an adult individual residing in Reno, Washoe County, Nevada. Plaintiff is female. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f), and was a person protected by NRS 613.330 and NRS 613.340.

9. Defendant CONTROLLED CONTAMINATION SERVICES, LLC is a limited liability company doing business in the State of Nevada, engaged in the business of providing cleanroom and contamination-control janitorial services, including at a worksite located at 1 USA Parkway, Lockwood, Nevada, and at client offices in Reno, Nevada, and maintaining a principal office at 14800 Landmark Boulevard, Suite 155, Dallas, Texas. At all relevant times, Defendant employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. The number of persons Defendant employed is within Defendant's knowledge. At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and NRS 613.310(2).

10. The true names and capacities of the Defendants sued herein as DOES 1 through 20, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named Defendant is responsible in some manner for the occurrences alleged herein. Plaintiff will seek leave to amend to allege the true names and capacities of such Defendants when they have been ascertained.

11. Plaintiff is informed and believes, and thereon alleges, that in committing the acts alleged herein, each Defendant was acting as the agent, representative, affiliate, and/or employee of each of the other Defendants and was acting within the course and scope of that relationship.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12. On or about April 15, 2026, Plaintiff timely filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 550-2026-01404. The Charge identifies sex as the basis of discrimination and states that Plaintiff "was discriminated against and harassed based on her gender, was sexually harassed, and then was retaliated and terminated based on same." The Charge further states that the discrimination was a continuing action. Each unlawful employment practice alleged herein occurred between December 15, 2025 and February 12, 2026. The Charge was therefore filed within 180 days, and in any event within 300 days, of each unlawful employment practice alleged herein.

13. In her Charge, Plaintiff requested that the Charge be filed with both the EEOC and the applicable state or local agency, and Plaintiff signed that request under penalty of perjury.

14. The EEOC and the Nevada Equal Rights Commission are, and at all times relevant hereto were, parties to a worksharing agreement under which each agency designates the other as its agent for the purpose of receiving charges. Plaintiff is informed and believes, and thereon alleges, that by operation of that agreement and of the request Plaintiff signed, the filing of the Charge with the EEOC constituted a filing with the Nevada Equal Rights Commission. Under NRS 233.160(1), a complaint alleging an unlawful discriminatory practice in employment is timely if it is filed with an appropriate federal agency within 300 days after the date of the occurrence of the alleged practice.

15. The EEOC issued Plaintiff a Notice of Right to Sue dated April 16, 2026. This action was filed within ninety (90) days of Plaintiff's receipt of that Notice. Plaintiff has exhausted all administrative prerequisites to suit on her Title VII claims.

16. Plaintiff's state-law claims are timely under NRS 613.430. This action was commenced within ninety (90) days after Plaintiff's receipt of the right-to-sue notice issued by the EEOC pursuant to 42 U.S.C. § 2000e-5(f)(1), and within 180 days after the date of Plaintiff's discharge, and the limitations period was tolled during the pendency of Plaintiff's Charge before the EEOC.

## STATEMENT OF FACTS

### A. Plaintiff's employment and disciplinary history.

17. Defendant hired Plaintiff on or about November 11, 2025. Plaintiff worked for Defendant on its account servicing Panasonic facilities in northern Nevada, first as a team lead at the facility located at 1 USA Parkway and later as a janitorial worker assigned to client offices in Reno, including facilities on Plumb Lane and Moana Lane. Plaintiff's rate of pay was $21.00 per hour. Plaintiff worked overnight and evening shifts.

18. Plaintiff's supervisor was Duncan O'Brien, Defendant's Operations Manager II. Harriet "Bo" Bostater was the night site supervisor. Crystal Olmos was Defendant's Employee Relations Specialist for the western region. Greg Harrison and James Reddick were members of Defendant's management copied on the personnel decisions at issue.

19. Before the events described below, every disciplinary action Defendant had issued to Plaintiff concerned attendance. Defendant never disciplined Plaintiff, formally or informally, for violating any client standard operating procedure, for any security or door-related infraction, for eating in any restricted area, for playing music, for any interaction with any security officer, or for any interaction with any employee of Panasonic.

20. Defendant did not identify attendance as a reason for Plaintiff's suspension in the suspension notice it sent her, and did not identify attendance as a reason for her discharge in the termination notice it sent her.

**B. The sexual harassment.**

21. On or about December 15, 2025, Defendant hired Guadalupe Adrian Ramirez Segoviano, a male coworker whom Plaintiff knew as "Adrian" and as "Angel," and assigned him to the same Reno worksites where Plaintiff worked.

22. Between on or about December 15, 2025 and January 19, 2026, Segoviano subjected Plaintiff to unwelcome conduct of a sexual nature, including by sending Plaintiff sexually explicit and harassing text messages during and outside working hours.

23. On or about the evening of Friday, January 16, 2026, Segoviano subjected Plaintiff to unwelcome physical contact at work by grabbing Plaintiff around the waist while leaning against her. Segoviano also touched Plaintiff's buttocks without her consent.

24. Segoviano's conduct was unwelcome, was directed at Plaintiff because of her sex, and was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a working environment that a reasonable person would find, and that Plaintiff did find, hostile and abusive.

**C. Plaintiff's protected complaint.**

25. On the night of January 19, 2026, during a shift that continued until 2:23 a.m. on January 20, 2026, Plaintiff reported Segoviano's conduct in person to O'Brien and Bostater at the Plumb Lane worksite, and showed them screenshots of Segoviano's messages.

26. At approximately 12:35 a.m. on January 20, 2026, O'Brien reported Plaintiff's complaint by email to Olmos and attached the screenshots Plaintiff had provided. O'Brien also gave Plaintiff Olmos's telephone number and email address so that Plaintiff could make a report to Employee Relations, and Plaintiff did so.

27. Plaintiff's complaints constituted activity protected by Title VII and by NRS 613.340.

**D. Defendant reassigned the complainant, not the harasser.**

28. Defendant's first responsive act was to move Plaintiff. Rather than reassign Segoviano, O'Brien left Segoviano assigned to the Plumb Lane and Moana Lane worksites and reassigned Plaintiff to the Gigafactory.

29. On January 20, 2026, Defendant suspended Segoviano without pay pending investigation and revoked his access to all Panasonic facilities. On January 23, 2026, Defendant terminated Segoviano's employment, recording the reason for separation as "Violation of Company Policy." Segoviano's last day of work was January 19, 2026.

30. After his suspension, Segoviano sent Plaintiff messages demanding that she withdraw her complaint and threatening her if she did not. The messages caused Plaintiff to fear for her personal safety, and Plaintiff requested and received a security escort to her vehicle at work.

31. After Plaintiff's complaint, and while Plaintiff was at work, an unknown person opened the hood of Plaintiff's vehicle in the parking area serving Defendant's worksite and tore out her battery cables. Plaintiff reported the incident to O'Brien contemporaneously by text message.

32. Shortly after Plaintiff's complaint, O'Brien wrote to Plaintiff by text message: "I promise everything will be okay, just give us your trust and we will make sure you are taken care of. I appreciate you doing that, like I said Panasonic and I want to protect you as best as we can."

**E. Seventeen days later, Defendant moved to discharge Plaintiff.**

33. Plaintiff worked her final shift on February 4, 2026, from 5:26 p.m. to 10:39 p.m.

34. At approximately 8:00 p.m. on February 4, 2026, a security officer assigned to the Plumb Lane site sent O'Brien a text message reporting that Plaintiff

had been "rude or snippy" with officers on the site, that earlier that evening Plaintiff "gave attitude about not propping a door open to a GMP area," that Plaintiff walked through an area where employees eat, and that Plaintiff played music at high volume. The remedy the officer requested was that Plaintiff "should be removed from this location."

35. At 10:35 a.m. on February 5, 2026, O'Brien sent an email to Olmos, Harrison and Reddick under the subject line "Suspension." O'Brien's email identified Plaintiff as "Mia Berta (this is the employee who just experienced the inappropriate work message incident)." The email stated that "Operations agree that she needs to be suspended and escalated to termination."

36. On February 6, 2026, Defendant suspended Plaintiff without pay, by text message at 1:17 p.m. and by email at 1:31 p.m. The email stated only that the action was taken "in response to allegations involving violating customer SOPs and unprofessional conduct that the client has communicated to Management." Defendant did not identify the conduct alleged, the date on which it was alleged to have occurred, its location, or the person who had reported it.

37. The suspension notice Defendant sent Plaintiff was, in material part, a verbatim copy of the suspension notice Defendant had sent Segoviano on January 20, 2026, with the stated reason replaced.

38. Defendant conducted no investigation of the February 4, 2026 allegations before discharging Plaintiff. Defendant took no statement from Plaintiff, and upon information and belief obtained no statement from any employee of Panasonic, before deciding to end her employment.

39. At 3:06 p.m. on February 12, 2026, Defendant terminated Plaintiff's employment by email. The notice stated that the decision was made "following a review of multiple documented incidents, including but not limited to security compliance breaches involving unsecured doors; eating within a GMP-controlled environment; unprofessional and inappropriate verbal conduct toward client personnel

and Controlled Contamination Services leadership; behavior inconsistent with client expectations; and insubordination toward leadership." The notice further stated that "a final on-site incident involving inappropriate and unprofessional verbal conduct may have contributed to a harassing work environment, in violation of the Company's No Harassment and Professional Conduct policies." The notice, sent on Thursday, February 12, 2026, further stated that Plaintiff's employment was terminated "effective today, Wednesday, February 11th, 2026."

40. The sentence quoted immediately above was a verbatim copy of language Defendant had drafted on January 21, 2026 for use in terminating Segoviano for sexual harassment. Defendant discharged the employee who reported sexual harassment using the words it had written to discharge the man who committed it, and thereby told Plaintiff that she had contributed to a harassing work environment.

**F. Defendant's stated reasons are false and have shifted.**

41. Defendant's stated reasons for Plaintiff's suspension and discharge were false and pretextual. The true reason was Plaintiff's protected complaint of sexual harassment. Plaintiff's sex was also a motivating factor.

42. Defendant has given materially different and inconsistent accounts of its reasons. The reason given internally on February 5, 2026 differed from the reason given to Plaintiff in the suspension notice of February 6, 2026, which in turn differed from the reasons given to Plaintiff in the termination notice of February 12, 2026.

43. No document Defendant created before Plaintiff's discharge states that Plaintiff left any door unlocked on any occasion. The only reference to a door in Defendant's contemporaneous records is the security officer's report that Plaintiff declined to prop a door open.

44. The only remedy the client's security officer requested was Plaintiff's removal from the Plumb Lane location. Defendant did not transfer Plaintiff. Defendant suspended her without pay and discharged her.

45. Plaintiff is informed and believes, and thereon alleges, that other employees of Defendant assigned to the Panasonic account ate meals at Panasonic employees' desks and inside Panasonic offices; that Defendant and its client were aware of that conduct; and that those employees were asked to relocate and were neither suspended without pay nor discharged. The identities of those employees, and Defendant's records of its response to their conduct, are within Defendant's possession, custody and control.

46. Defendant did not apply its progressive discipline process to the February 2026 allegations. Defendant issued Plaintiff no written warning, no counseling statement, and no performance discussion concerning any of the conduct on which it relied.

**G. Damages.**

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic damages, including lost wages and lost benefits, in amounts to be proven at trial.

48. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer noneconomic damages, including severe emotional distress, anxiety, persistent fear for her personal safety, and a prolonged inability to return to work.

49. O'Brien, Olmos, Harrison and Reddick acted within the course and scope of their employment and within the authority Defendant delegated to them, and Defendant authorized, participated in, and ratified their conduct. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

## FIRST CAUSE OF ACTION

### Sexual Harassment / Hostile Work Environment in Violation of Title VII

(42 U.S.C. § 2000e-2(a)) (Against All Defendants)

50. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

51. Plaintiff is a member of a protected class on the basis of her sex (female).

52. Plaintiff was subjected to unwelcome conduct of a sexual nature, including unwelcome sexually explicit text messages and unwelcome physical contact, as alleged above.

53. The harassment was because of Plaintiff's sex.

54. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create a working environment that a reasonable person would find, and that Plaintiff did find, hostile and abusive.

55. Defendant knew or should have known of the harassment and failed to take immediate and appropriate corrective action. Defendant's first responsive act was to reassign Plaintiff rather than the harasser, and Defendant thereafter failed to protect Plaintiff from the threats and intimidation that followed her complaint.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits and severe emotional distress, in amounts to be proven at trial.

57. Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## SECOND CAUSE OF ACTION

### Sex Discrimination in Violation of Title VII

(42 U.S.C. § 2000e-2(a)) (Against All Defendants)

58. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

59. Title VII makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1).

60. Plaintiff is female, was qualified for her position, and was performing her job duties competently.

61. Defendant subjected Plaintiff to adverse employment actions, including her reassignment, her unpaid suspension, and the termination of her employment.

62. Plaintiff's sex was a motivating factor in Defendant's adverse employment actions. Among other things, Defendant moved the female complainant rather than the male harasser; Defendant suspended without pay and discharged the female employee who reported sexual harassment on the stated ground that a "final on-site incident" of hers "may have contributed to a harassing work environment"; and Defendant treated other employees who engaged in comparable conduct on the same account more favorably.

63. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including lost wages and benefits and severe emotional distress, in amounts to be proven at trial.

64. Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## <u>THIRD CAUSE OF ACTION</u>

**Retaliation in Violation of Title VII**

(42 U.S.C. § 2000e-3(a)) (Against All Defendants)

65. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

66. Plaintiff engaged in protected activity when she opposed and complained about sexual harassment to her supervisor and to Defendant's Employee Relations department on and after January 19, 2026.

67. Defendant subjected Plaintiff to materially adverse actions, including her reassignment, her unpaid suspension on February 6, 2026, and the termination of her

employment on February 12, 2026, each of which would dissuade a reasonable worker from making or supporting a charge of discrimination.

68. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions. Seventeen days elapsed between Plaintiff's complaint and the internal recommendation that she be "suspended and escalated to termination," and twenty-four days elapsed between her complaint and her discharge. The manager who made that recommendation identified Plaintiff, in the same email, by reference to her protected complaint, as "the employee who just experienced the inappropriate work message incident." Defendant discharged Plaintiff using language it had drafted to discharge her harasser for sexual harassment. Defendant's stated reasons have shifted and are unsupported by its own contemporaneous records. But for Plaintiff's protected activity, Defendant would not have reassigned, suspended, or discharged her.

69. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages and benefits and severe emotional distress, in amounts to be proven at trial.

70. Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## FOURTH CAUSE OF ACTION

### Sex Discrimination and Hostile Work Environment in Violation of NRS 613.330

(Against All Defendants)

71. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

72. NRS 613.330 makes it an unlawful employment practice for an employer to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of the person's sex.

73. Defendant subjected Plaintiff to a hostile work environment based on her sex, knew or should have known of the harassment, and failed to take immediate and appropriate corrective action, as alleged above. Defendant further discriminated against Plaintiff because of her sex by reassigning her rather than the harasser, and by suspending her without pay and discharging her, as alleged above.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits and severe emotional distress, in amounts to be proven at trial, and Plaintiff is entitled to all relief available under NRS 613.310 to 613.4383, inclusive, including the relief made available by NRS 613.432.

## FIFTH CAUSE OF ACTION

### Retaliation in Violation of NRS 613.340

(Against All Defendants)

75. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

76. NRS 613.340 makes it an unlawful employment practice for an employer to discriminate against any of its employees because the employee has opposed any practice made an unlawful employment practice by NRS 613.133 or 613.310 to 613.4383, inclusive, or because the employee has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing thereunder.

77. Plaintiff opposed unlawful sexual harassment and complained of the same to Defendant, and Defendant retaliated against Plaintiff by reassigning her, suspending her without pay, and discharging her, as alleged above.

78. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages and benefits and severe emotional distress, in amounts to be proven at trial, and Plaintiff is entitled to all relief available under NRS 613.310 to 613.4383, inclusive, including the relief made available by NRS 613.432.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

a. For an award of back pay, front pay, and lost benefits, in amounts to be proven at trial;

b. For compensatory damages, including damages for emotional distress, in amounts to be proven at trial;

c. For punitive damages as permitted by 42 U.S.C. § 1981a and applicable law;

d. For injunctive and equitable relief, including reinstatement where appropriate;

e. For prejudgment and postjudgment interest as permitted by law;

f. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), NRS 613.432, and applicable law; and

g. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

79. Plaintiff hereby demands a trial by jury on all claims and issues so triable. Fed. R. Civ. P. 38(b); 42 U.S.C. § 1981a(c).

DATED this 14th day of September, 2026.

Respectfully submitted,
**FREIMAN LEGAL, P.C.**
/s/ Lawrence W. Freiman
**LAWRENCE W. FREIMAN, ESQ.**
Nevada Bar No. 10588
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
Telephone: (310) 917-1004
lawrence@freimanlegal.com
*Counsel for Plaintiff Mia Bernadette Berta*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing FIRST AMENDED COMPLAINT FOR DAMAGES with the Clerk of the Court for the United States District Court for the District of Nevada by using the CM/ECF system. Service was accomplished on the following counsel of record by the Court's CM/ECF system:

Deverie J. Christensen, Esq.
Tenesa S. Powell, Esq.
JACKSON LEWIS P.C.
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
deverie.christensen@jacksonlewis.com
tenesa.powell@jacksonlewis.com
Attorneys for Defendant Controlled Contamination Services, LLC

/s/ Lawrence W. Freiman
An employee of Freiman Legal, P.C.